IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.                                          CIV 17-0894 KBM/LF

$65,020 UNITED STATES CURRENCY,

2008 HONDA ACCORD
VIN: JHMCP26738C002908,

    *Defendant-in-rem*.

and

JULIO CESAR FIGUEROA-RIVERA,

    *Claimant*.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on the United States' Motion to Strike Julio Cesar Figueroa-Rivera's Verified Claim (*Doc. 22*), filed February 21, 2018. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 13-15.* Having considered the record, submissions of counsel, and the relevant law, the Court finds that the motion to strike is not well-taken and will be denied.

### I.    BACKGROUND

On August 30, 2017, the United States filed a Verified Complaint for Forfeiture *In Rem*, seeking forfeiture of $65,020.00 in United States Currency, as well as a 2008 Honda Accord, VIN JHMCP26738C002908, pursuant to 21 U.S.C. § 881(a)(6), (4).

*Doc. 1* at 1. The allegations giving rise to the forfeiture action are set forth in the Verified Complaint. *See id.* On March 23, 2016, Bernalillo County Sheriff's Office ("BSCO") Deputy Leonard Armijo conducted a traffic stop of the subject Honda Accord, which was traveling on Interstate 40, for an unsafe lane change and improper display of a temporary registration plate. *Id.* at ¶ 7. The driver and sole occupant of the Honda Accord was Julio Cesar Figueroa-Rivera ("Claimant"). *Id.* Upon visual inspection of the vehicle's exterior, Deputy Armijo noticed that the exhaust system was hanging well below the normal limits. *Id.* at ¶ 10. After Figueroa-Rivera declined to consent to a search of the vehicle, BCSO Deputy Pat Rael and his certified drug detection dog conducted an open-air sniff, and the dog alerted positively for the odor of illegal drugs near the rear of the vehicle. *Id.* at ¶ 12. Deputy Armijo inspected the rear underside of the vehicle and discovered non-factory parts, tooling on the bolts, freshly cut metal, and fresh paint. *Id.* at ¶ 13. A more thorough inspection of the vehicle at a public works facility revealed two non-factory compartments containing six cellophane-wrapped and rubber-banded bundles containing $65,020.00. *Id.* at ¶ 14.

Following commencement of this forfeiture action, Claimant filed a Verified Claim to Property on October 24, 2017, asserting an ownership interest only in the currency identified in the complaint, not the car. *Doc. 7.* More specifically, Claimant stated that he is "the owner of sixty-five thousand and twenty dollars ($65,020.00) in U.S. Currency" and that he "was in lawful possession of all of the U.S. Currency at the time of the seizure." *Id.* at 1. Additionally, on November 14, 2017, Claimant filed an Answer to Plaintiff's Verified Complaint for Forfeiture *In Rem*, in which he responded to a number

of the government's assertions by invoking the "right provided under the state and federal constitutions to remain silent." *Doc. 9.*

As permitted by Supplemental Rule G(6)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions,[1] the United States served special interrogatories on Claimant in order to gather information bearing on his standing to bring a claim to the currency seized from the Honda Accord. *Doc. 22 at 6.* In response to each of the special interrogatories, Claimant Figueroa-Rivera asserted his Fifth Amendment right not to incriminate himself. *See Doc. 22-1.* Thereafter, the United States moved to strike Claimant's verified claim and answer. *Doc. 22.*

## II. ANALYSIS

Supplemental Rule G provides a mechanism for the government to move to strike a claim or answer in a civil forfeiture case. Specifically, Supplemental Rule G(8)(c) authorizes the filing of such a motion at any time before trial for one of the following reasons: 1) failure to comply with Supplemental Rule G(5), a provision that requires the timely filing of a proper verified claim; 2) failure to comply with Supplemental Rule G(6), a provision that requires a claimant to answer or object to special interrogatories from the United States; or 3) because the claimant lacks standing. *See* Supp. R. G(8)(c)(i). A motion to strike "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." *See* Supp. R. G(8)(c)(ii)(B).

---

[1] Supplemental Rule G governs forfeiture actions *in rem* arising from a federal statute. *See* Supp. R. G(1).

3

Under Tenth Circuit law, a claimant who has "asserted an ownership interest in the res at issue and has provided some evidence tending to support the existence of that ownership interest, . . . has standing to challenge the forfeiture." *United States v. $148,840.00 in United States Currency*, 521 F.3d 1268, 1276 (10th Cir. 2008). Moreover, the unequivocal claim of ownership over the res coupled with undisputed evidence that the res was taken from the claimant's possession and control are together sufficient to confer constitutional standing. *See id.* at 1276-78.

Here, the United States' motion to strike is not presented as either a motion for judgment on the pleadings or as a motion for summary judgment. Instead, it asks the Court to exercise its discretion to strike Claimant's verified claim based upon his refusal to answer special interrogatories in favor of invoking his Fifth Amendment privilege. Clarifying that "standing is not the issue before the Court," the United States suggests that Claimant's assertion of his Fifth Amendment privilege justifies the striking of his claim and answer. *Doc. 22* at 2.

Supplemental Rule G(8) does not expressly permit the striking of a verified claim and answer under the circumstances here; the United States seems to acknowledge as much in its reply brief. *Doc. 25* at 4 ("The Court is not considering a motion under Supplemental Rule G(8)."). Although Supplemental Rule G(8) sanctions striking a claim when a claimant fails to answer or object to special interrogatories pursuant to Supplemental Rule G(6), Claimant was technically compliant with Supplemental Rule G(6). That rule merely requires that a claimant's "[a]nswers or objections to [special interrogatories] be served within 21 days after the interrogatories are served." Supp. R. G(6)(b). Claimant provided his Fifth-Amendment assertions in response to the special

4

interrogatories on November 29, 2017. *See Doc. 22-1*. In the Court's view, Claimant thereby provided timely objections to United States' special interrogatories, in compliance with Supplemental Rule G(6). Given such compliance, the United States cannot rest its motion to strike upon procedural rules. It relies, instead, upon case law, or perhaps more accurately on *dicta*, from the Tenth Circuit, as well as persuasive authority from other courts.

First, the United States suggests that its motion comports with the "guidance" provided by the Tenth Circuit in *United States v. $148,840.00*, 521 F.3d 1268 (10th Cir. 2008) for addressing a claimant's use of the Fifth Amendment as an "offensive litigation tool" in civil forfeiture cases. *See Doc. 25* at 4. Although the government asserts that the factual posture of this case is "virtually identical" to that in *United States v. $148,840.00*, the primary issue there was whether the claimant had advanced sufficient jurisdictional facts to support his constitutional <u>standing</u>. 521 F.3d at 1270. The Tenth Circuit examined the determination by Honorable Martha Vazquez of this District that the claimant lacked constitutional standing to challenge the forfeiture of currency discovered in a cooler in the trunk of the vehicle he was driving. *Id.* at 1270-71. The claimant had filed a verified claim opposing forfeiture, as well as an answer to the government's complaint, both of which asserted that he was the owner of the currency. *Id.* at 1272. At his deposition, the claimant testified that he was the owner of the currency seized; however, he invoked his Fifth Amendment privilege in response to more specific questions about the currency and its source. *Id.*

Moving to strike his claim and answer, the government argued that because the claimant had invoked his Fifth Amendment privilege in response to questions about his

5

possession of the currency, he "should be barred from contesting the forfeiture action on the ground that he failed to carry his burden of establishing constitutional standing." *Id.* While Judge Vazquez agreed, the Tenth Circuit did not. The Tenth Circuit held that because the claimant asserted ownership of the currency, as opposed to possession on behalf of another, "it was of no moment that he invoked his privilege against self-incrimination at his deposition when asked to explain his interest in detail." *Id.* at 1275. The court clarified that it was enough, for purposes of constitutional standing at the summary judgment stage, that he claimed to own the money taken from his possession. *Id.* at 1275.

Although there are factual similarities, as Claimant here *also* asserted ownership of money seized from a vehicle he was driving, the court's holding in *United States v. $148,840.00* does not resolve the issue presented in the government's Motion to Strike. Even so, the Tenth Circuit does offer some commentary bearing on the issues currently before the Court. It projected that it would have been a "different case if the district court had exercised its discretion to strike [the] claim of ownership to the currency in light of [the claimant's] repeated invocations of the Fifth Amendment privilege." *Id.* at 1277. It explained:

> It is well established that in a civil case a district court may strike conclusory testimony if the witness asserts the Fifth Amendment privilege to avoid answering relevant questions, yet freely responds to questions that are advantageous to his cause. This doctrine exists to prevent a party from converting the Fifth Amendment privilege from its intended use as a shield against compulsory self-incrimination into an offensive sword.

*Id.* at 1277 (citations omitted).[2]

---

[2] The Tenth Circuit in *United States v. $148,840.00* noted that the government never moved to strike the claimant's deposition testimony wherein he asserted a claim of ownership to the

6

Claimant concedes that courts *do* have discretion to strike testimony when a witness converts the Fifth Amendment privilege into an offensive tool. *See Doc. 23* at 3. Nevertheless, he maintains that "[n]ot every failure to respond to [special] interrogatories warrants an order striking the claim." *See id.* (quoting Supp. R. G, Advisory Committee Note Subsection 6). He asserts that the purpose of a motion to strike in a civil forfeiture case is to "prevent false-claimants with no colorable claim to the seized property from trolling the internet for forfeiture notices and intervening in forfeiture proceedings." *Id.* (citing *United States v. Funds in the Amount of $574,840.00*, 719 F.3d 648, 652-53 (7th Cir. 2003)). Because Claimant has asserted a colorable claim of ownership and was in possession of the currency when it was seized, he insists that his assertion of Fifth Amendment rights in response to special interrogatories does not warrant striking his claim. But Claimant's position oversimplifies the purposes of motions to strike.

Notably, the Tenth Circuit's "guidance" in *United States v. $148,840.00* rested in part upon the rationale of the First Circuit in *United States v. Parcels of Land*, 903 F.2d 36, 43 (1st Cir. 1990), a case on which the United States also relies. In *Parcels of Land*, the district court granted a motion to strike the affidavit of a claimant after he invoked his Fifth Amendment privilege in response to questions asked by the government at his deposition related to his involvement in drug trafficking and to his sources of income. *Parcels of Land*, 903 F.2d at 42-43. The First Circuit held that the district court "had ample authority" to strike the claimant's affidavit based upon the subsequent assertion of Fifth Amendment rights. *Id.* at 43. It reasoned that just as it is permissible to strike the

---

seized currency. *Id.* at 1277. Consequently, it found that "the district court was squarely presented with [the] claim of ownership when it considered the standing issue." *Id.*

7

direct testimony of a witness when she invokes the Fifth Amendment on cross-examination, it is permissible to strike the affidavit of a claimant who invokes the Fifth Amendment when being deposed during the same proceeding. *Id.* at 43-44. The court explained that "the power to strike is grounded in the principle that once a witness testifies, she may not invoke the fifth amendment privilege so as to shield that testimony from scrutiny. To allow her to do so would constitute a positive invitation to mutilate the truth." *Id.* at 43 (internal quotations and citations omitted). The United States draws upon this rationale to assert that a verified claim, which it suggests contains testimonial statements, is likewise subject to a motion to strike upon a claimant's assertion of Fifth Amendment rights.

The Court accepts the premise that verified claims, which are required to be "signed by the claimant under penalty of perjury," constitute a type of testimonial evidence. *See United States v. Funds in the Amount of $574,840*, 719 F.3d at 653 ("[T]he claim that Rule G(5)(a)(i) requires of a claimant is not just a naked statement 'I want the dough.' It must be signed under penalty of perjury and identify the claimant and the nature of his interest. It is evidence.") Additionally, the Court agrees with the principle, alluded to in both *United States v. $148,840.00* and *Parcels of Land*, that a claimant may not use their Fifth Amendment right as an offensive sword. At the same time, the Court is cognizant of its duty to protect and accommodate the Fifth Amendment rights of claimants in civil forfeiture cases. *See Parcels of Land*, 903 F.2d at 44 (noting that courts should use their discretion in civil forfeiture cases to accommodate claimants' Fifth Amendment interests). Moreover, the Court is troubled by

a particular distinction in the present case: the government has moved to strike *the claim and answer*, not merely offending discovery responses.

When a court strikes discovery responses, the claimant faces an evidentiary hurdle in civil forfeiture litigation, which they may or may not be able to overcome. *See United States v. $148,840.00*, 521 F.3d at 1273-74 ("[A] party who asserts the privilege against self-incrimination must bear the consequence of a lack of evidence."). On the other hand, when a court strikes a verified claim and answer, the claimant is left without any method to contest the forfeiture. *See Funds in the Amount of $574,840*, 719 F.3d at 653 (reasoning that "striking a claim is a decision on the merits . . . a determination that [the claimant] has no interest in the property"); *see also* Supp. R. G(5) (providing that the manner by which a person "may contest the forfeiture" is through the filing of a claim and an answer). While verified claims are evidence, they are also more than that. They are the proscribed manner by which a claimant contests the forfeiture of property.

Nevertheless, the United States maintains that "[c]ourts have struck verified claims where claimants have asserted the Fifth Amendment in response to discovery inquiries," citing *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 641 (9th Cir. 2012) and *United States v. Amount of $174,000.00*, No. 11C6698, 2012 WL 2562133 (N.D. Ill. June 28, 2018)). *Doc. 22* at 7. The procedural posture and rationale of the cases cited by the government warrant a closer look, however.

First, in *United States v. $133,420.00*, the claimant asserted various objections to special interrogatories propounded by the government, including an objection that the requests sought information in violation of his Fifth Amendment privilege. 672 F.3d at 636. Determining that the claimant had impermissibly used the Fifth Amendment

9

privilege as a sword by claiming an ownership interest but refusing to respond to "follow-up questions," the district court struck the claimant's discovery responses. *Id*. at 637. In a separate inquiry, the district court, and the Ninth Circuit on appeal, considered whether the claimant could establish standing apart from any evidence of record other than his verified claim. *See id*. at 637-40. The Ninth Circuit concluded that, although the verified claim was admissible evidence that could be considered on the issue of standing, the claimant's statement therein that he had an "ownership *and/or a possessory interest*" in the defendant property was equivocal and inadequate to create a genuine issue of material fact regarding standing. *Id*. at 640 (emphasis added). The Ninth Circuit stated its holding as follows: "[T]he district court did not err in striking [the claimant's] interrogatory response claiming ownership of the property, and because the remaining evidence was inadequate to establish that [the claimant] had standing, we affirm." *Id*. at 634 (emphasis added).

In *Funds in the Amount of $174,000.00*, the government moved to strike the claim pursuant to Supplemental Rule G(8)(c)(ii)(B), based upon the claimant's failure to carry the burden of showing that he had Article III standing.[3] *See Funds in the Amount of $174,000*, 2012 WL 2562133, at *1. The district court, relying upon *United States v. $148,840*, ultimately granted the government's motion to strike the claim, because the claimant repeatedly asserted his Fifth Amendment privilege. *See Funds in the Amount of $174,000.00*, 2012 WL 2562133, at *1-2. In this Court's view, however, the district judge misread the Tenth Circuit's discussion of the Fifth Amendment privilege. As he understood it, the Tenth Circuit was inviting district courts to strike *verified claims* based

---

[3] Once again, in the present case the United States has insisted that its motion to strike does not hinge on the standing issue.

10

upon a claimant's repeated invocation of the Fifth Amendment privilege. *See id.* at *1. To the contrary, the Tenth Circuit merely suggested that a district court would have discretion to strike a "claim of ownership" – in that case deposition testimony in which the claimant asserted ownership – for the offensive use of the Fifth Amendment. *See United States v. $148,840*, 521 F.3d at 1277.

Here, if the United States was requesting that Claimant's discovery responses be stricken in light of his invocation of the Fifth Amendment privilege in his answers to special interrogatories, the Court would be more inclined to grant such relief. Instead, the government asks the Court to exercise its discretion to strike the verified claim and answer – the filings that constitute the only manner by which Claimant may contest forfeiture of the seized currency. Balancing the United States' interest in forfeiture against a claimant's privilege against self-incrimination, the Court ultimately concludes that the interests weigh against striking the verified claim and answer based upon Claimant's invocation of his Fifth Amendment privilege.

Wherefore,

**IT IS HEREBY ORDERED** that the United States' Motion to Strike Julio Cesar Figueroa-Rivera's Verified Claim (*Doc. 22*) is **denied.**

_____
UNITED STATES MAGISTRATE JUDGE